BELL V. VPSI, INC. ET AL.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-352-CV

LINDA C. BELL APPELLANT

V.

VPSI, INC. AND FORT WORTH APPELLEES

TRANSPORTATION AUTHORITY

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Introduction

Appellant Linda C. Bell sued Appellees VPSI, Inc. and the Fort Worth Transportation Authority (“Transportation Authority”), asserting vicarious liability for alleged injuries she suffered in a vehicular accident while a passenger in a van driven by her husband, Homer Bell.  She appeals from a summary judgment in favor of VPSI and the Transportation Authority and from the denial of her own motion for partial summary judgment, all on the issue of vicarious liability.  We affirm the judgment of the trial court.

Background

A. The Vanpool Program

The Transportation Authority, also known as the “T,” is a regional political subdivision of the State that provides public transportation services in and around Tarrant County.  VPSI is a wholly-owned subsidiary of The Budget Group, Inc., a general-use car rental business.  VPSI is a for-profit corporation, the business of which is providing and operating commuter vanpool programs.  In conjunction with local transportation authorities, VPSI operates vanpool transportation programs in over forty urban areas across the United States.  

The Transportation Authority’s Rideshare Department began a vanpool program in Tarrant County in 1974 with six city-owned vans.  In 1984, the Transportation Authority decided to use VPSI as a provider of vehicles and maintenance for its vanpool program.  In cooperation with VPSI, the vanpool program grew to 125 vans by 1995.  The program served a number of corporate employers in Tarrant County, including Lockheed, Bell Helicopter, and Burlington Northern.  

In 1998, anticipating continued increase in vanpools with federal funding, the Transportation Authority contracted directly with VPSI to lease a fleet of 9-, 12-, and 15-passenger Dodge vans from VPSI for the vanpool program, and to provide management, maintenance, and insurance.  The stated purposes of the vanpool program were to reduce the number of single occupancy vehicles on the road by encouraging vanpools as a viable alternative, thus reducing air pollution to meet federal environmental directives, to provide cost-effective transportation services to commuters not in a traditional bus service area, to offer a selection of vehicle sizes in order to allow smaller groups of commuters to take advantage of vanpooling as an option to driving alone; and to assist in general in providing regional transportation to commuters originating or terminating in Tarrant County.  

B. Vanpool Drivers

Under the vanpool program, drivers, passengers, and their employers are solicited by the Transportation Authority and VPSI to participate in the vanpool program for commutes between their places of employment and homes.  Passenger groups are formed by the Transportation Authority based upon origin and destination points; passengers pay a monthly charge to the Transportation Authority for commutes to and from work.  Volunteer drivers who want to be a part of a vanpool agree to transport passengers to and from their employment in vans provided by VPSI.  Each driver is assigned a van and agrees to drive and maintain the van, including scheduled and unscheduled maintenance at VPSI’s cost, recruit additional passengers to keep the vanpool at optimal occupancy, and collect the vanpool passenger charges.  Drivers receive coupon books to present to approved maintenance dealerships, service vendors, and repair facilities, with charges billed directly to VPSI.  In exchange, the drivers receive daily commutes to and from their employment without charge and are also allowed personal use of the assigned vans on evenings and weekends for up to 250 miles per month.  The Transportation Authority bills the driver for fuel consumed during the 250 personal-usage miles.  

The relationship between VPSI, the Transportation Authority, and the driver is governed by a contract called the “Three-Party Volunteer Driver Agreement.”  The three-party agreement specifies that an Authorized Driver must have a valid driver’s license; have at least five years’ licensed driving experience; be at least twenty-five years of age; and be approved, in writing, by VPSI to operate vehicles provided by VPSI.  The agreement further provides that the Authorized Driver “is not an agent, servant or employee of VPSI.  The Authorized Driver is an independent party participating, with others, in a voluntary, not for profit, ridesharing agreement.”     

C. The Accident 

Linda Bell’s husband, Homer Bell, was regularly employed by Lockheed in Fort Worth.  In March 1999, Homer entered into a three-party volunteer driver agreement with the Transportation Authority and VPSI to be an Authorized Driver under the vanpool program for daily commutes of employees to Lockheed.   
 

On a rainy Saturday in December 1999, Homer drove the van he had been assigned, with Linda as a passenger, some twenty-eight miles from their home in Forestburg to Decatur.  From Forestburg, they traveled down the Alvord highway, turned onto Highway 287, and continued on that highway into Decatur.  After stopping for about thirty minutes to service and change the van’s oil at the Kwik Lube in Decatur, Homer and Linda shopped at the local Wal-Mart for about an hour, lunched at Taco Bell for approximately another half hour, and then returned to the Wal-Mart parking lot where they waited nearly another hour for their daughter to deliver their two grandchildren to them for an overnight stay.   

After picking up their grandchildren, Homer and Linda left Decatur and proceeded thirteen to fifteen miles up a different road to see a display of a lighted Santa Claus figure loading his reindeer into an eighteen-wheeler.  From the Wal-Mart, they drove up FM 51 to Highway 455, where they made a short detour at Slidell to see the display.  After stopping to see Santa, they started driving back to Forestburg.  They were on Farm Road 455 headed toward the Alvord highway, which would have taken them back to Forestburg, when the van hydroplaned on the wet roadway and crashed into a tree.  Linda alleged that she sustained injuries in the accident.

D. The Suit

Linda sued Homer, VPSI, and the Transportation Authority, alleging that Homer’s negligence, in exceeding a safe speed under the wet road conditions, proximately caused her injuries, and that VPSI and the Transportation Authority were vicariously liable for Homer’s negligence under the doctrines of respondeat superior, retained contractual control, and joint enterprise.  VPSI and the Transportation Authority filed traditional motions for summary judgment on Linda’s vicarious liability allegations, arguing that Homer was an independent contractor and that no agency, employment, or joint enterprise relationship existed between them and Homer; that VPSI and the Transportation Authority had no right or authority to control Homer at the time of the accident; and that the acts of Homer for which Plaintiff sought to impose liability were outside the course and scope of any authority or employment at the time of the accident.  The Transportation Authority also moved for summary judgment on the ground that, as a governmental unit, it retained sovereign immunity as to liability for any negligence of Homer as a volunteer vanpool driver and independent contractor, and that Linda failed to comply with the notice requirement of the Texas Tort Claims Act.    

Linda filed a response and a cross-motion for partial summary judgment on the same issues and amended her petition to include direct allegations of negligence against VPSI and the Transportation Authority, alleging failure to train Homer in safe driving practices.  The trial court granted VPSI’s and the Transportation Authority’s motions for summary judgment and denied Linda’s.  The trial court later granted another summary judgment in favor of VPSI on Linda’s direct negligence claim.  Linda nonsuited her claims against Homer and her remaining claims against the Transportation Authority.  Linda appeals only from the summary judgments on her vicarious liability claims and the denial of her own partial summary judgment motion.  She does not contest the direct negligence summary judgment.

Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.  When, as here, the trial court does not specify the grounds upon which a summary judgment was granted, we affirm the summary judgment if any of the ories presented to the trial court and preserved for appellate review are meritorious.  
Cincinnati Life Ins. Co. v. Cates
, 927 S.W.2d 623, 626 (Tex. 1996);
 Carr v. Brasher
, 776 S.W.2d 567, 569 (Tex. 1989).    

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

Vicarious liability

In her first three issues, Linda argues that VPSI and the Transportation Authority had a right of control over the details of Homer’s activity that caused the accident, thus exposing them to vicarious liability; that Homer was in the course and scope of his employment at the time of the accident; and that Homer’s mingling of personal business with vanpool business did not take him outside the course and scope of his employment or contractual duties. We read Linda’s fourth amended petition as specifically pleading theories of respondeat superior based on a master-servant relationship, retention of contractual supervisory control, and joint enterprise as the alternative bases of her vicarious liability claims against VPSI and the Transportation Authority for Homer’s alleged negligence, and we will frame our analysis in the context of those three theories.

A. Respondeat Superior

Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an employee acting within the scope of his employment, although the employer has not personally committed a wrong. 
 St. Joseph Hosp. v. Wolff, 
94 S.W.3d 513, 541-42 (Tex. 2002).
  “The most frequently proffered justification for imposing such liability is that the principal or employer has the right to control the means and methods of the agent or employee’s work.”  
Id
. at 542 (quoting 
Baptist Mem’l Hosp. Sys. v. Sampson,
 969 S.W.2d 945, 947 (Tex.1998))
. This right to control distinguishes independent contractors, who have sole control over the means and methods of the work to be accomplished, from employees. 
Sampson,
 969 S.W.2d at 947.  The right of control is the “supreme test” for whether a master-servant relationship, rather than an independent contractor relationship, exists.  
Wolff,
 94 S.W.3d at 542 (citing 
Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins,
 926 S.W.2d 287, 290 (Tex.1996)).  
 In her fourth amended petition and response to the motions for summary judgment of VPSI and the Transportation Authority, Linda alleged that Homer was the employee or co-employee of those Defendants, rather than an independent contractor, because the detailed provisions of the contract subjected him to their right to control the details of his work as a driver in the vanpool program and that he was acting within the course and scope of his employment at the time of the accident.  In their motions for summary judgment, VPSI and the Transportation Authority contended that, as a matter of law, Homer was not their employee or agent and that he was not acting within the course and scope of any employment or agency relationship. 
 We will uphold the trial court’s summary judgment on the theory of respondeat superior if VPSI and the Transportation Authority conclusively negated at least one element of Linda’s respondeat superior claim.  
See
 
Tex. R. Civ. P.
 166a(c).  

Right of control

VPSI and the Transportation Authority contended in their motions for summary judgment that the express terms of the three-party agreement, providing that the drivers are not their employees, servants, or agents but are independent parties operating as volunteers, conclusively establishes Homer’s status as a volunteer or independent contractor.  A contract between the parties that establishes an independent contractor relationship is determinative of the parties’ relationship in absence of extrinsic evidence indicating that the contract was a “sham or cloak” designed to conceal the true legal relationship of the parties or that despite the contract terms, the true agreement vested the right of control in the principal. 
 
Exxon Corp. v. Perez
, 842 S.W.2d 629, 630 (Tex. 1992) (citing 
Newspapers, Inc. v. Love
, 380 S.W.2d 582, 590 (Tex. 1964)); 
see also Ross v. Tex. One P’ship
, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990), 
writ denied
, 806 S.W.2d 222 (Tex. 1991).
(footnote: 1)   

Linda does not rely on extrinsic evidence to show that the contract was a sham or subterfuge; nor does she point to any summary judgment evidence of actual exercise of control to show that the true operating agreement vested the right of control in VPSI and the Transportation Authority.  Rather, she relies upon other terms of the contract specifying the duties of the parties as evidence that VPSI and the Transportation Authority retained the right of control over the details of Homer’s work as a driver, such that the true agreement created a master-servant relationship.  She points to the list of duties that an authorized driver assumed under the contract, including the responsibility to keep the exterior and interior of the van clean; to purchase gas at major name-brand service stations; comply with recommended or required maintenance service at approved service stations; obtain VPSI’s advance authorization prior to any other maintenance or repair over a certain dollar amount; not drive outside a 200-mile radius of the driver’s home; and operate the vehicle in accordance with “all applicable laws, ordinances, rules and regulations.”  She also emphasizes that he was required to drive the van according to a preset schedule and to participate in a basic driver safety training program, and that his decision-making was limited to choosing where to pick up passengers and whether eating or smoking would be allowed.  
Linda argues that the agreement’s provision giving VPSI the right to terminate the agreement on thirty days’ notice without cause or on twenty-four hours’ notice with cause demonstrates that VPSI retained a right to control the details of Homer’s compliance with the contract because it could terminate him at any time. 

The right to terminate an agreement as to a worker is not evidence that details of the work are subject to the principal’s control.  
See Mary Kay Inc. v. Woolf
, 146 S.W.3d 813, 819 (Tex. App.—Dallas 2004, pet. denied) (citing
 Cont’l Ins. v. Wolford
, 526 S.W.2d 539, 541-42 (Tex. 1975) (holding right to discharge worker not evidence worker was employee; worker was independent contractor as matter of law)).  Similarly, requirements that a worker comply with applicable laws, regulations and safety requirements that relate to performance of the contract likewise do not constitute evidence that the employer controls the details of how the worker performs his job.  
See, e.g., Hoechst Celanese Corp. v. Compton
, 899 S.W.2d 215, 221 (Tex. App.—Houston [14th Dist.] 1994, writ denied); 
Granger v. Tealstone Contractors, L.P.
, No. 05-04-00636-CV, 2005 WL 565098, at *1 (Tex. App.—Dallas 2005, pet. denied) (mem. op.).  Linda does not explain how the other provisions of the contract requiring Homer to assume responsibility for keeping the van clean or for maintenance, service, and repairs constitute anything more than would be required for an ordinary lease or bailment or are inconsistent with the express provision that he is not an agent, servant, employee or co-employee of VPSI and the Transportation Authority.

Considering the summary judgment evidence before us, we hold that VPSI and the Transportation Authority conclusively established by the express terms of the contract that Homer was an independent contractor.  Conversely, Linda failed to conclusively establish that he was not.

Course and scope

VPSI and the Transportation Authority further contend that, even if Homer was an employee, the summary judgment evidence conclusively established that, at the time of the accident, he was not in the course and scope of any employment. 
 We agree.  In order to render the master liable for an act of his employee, the act must be committed within the scope of the general authority of the employee, in furtherance of the master’s business, and for the accomplishment of the object for which the servant was hired. 
 
Leadon v. Kimbrough Bros. Lumber Co.
, 484 S.W.2d 567, 569 (Tex. 1972); 
Robertson Tank Lines, Inc. v. Van Cleave
, 468 S.W.2d 354, 357 (Tex. 1971)
.  An employer is liable for the negligent acts of his employee only if, on the occasion in question, the employer had the right and power to direct and control the employee in the performance of the causal act or omission at the time of its occurrence.  
Arbelaez v. Just Brakes Corp.
,149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.) (citing 
Wolff
, 94 S.W.3d at 542)
; J & C Drilling Co. v. Salaiz, 
866 S.W.2d 632, 636 (Tex. App.—San Antonio 1993, no writ). 

Linda contends that the summary judgment evidence establishes that Homer’s activity at the time was within the course and scope of the vanpool agreement because (1) the trip was necessitated by contractually-required  maintenance, (2) personal use of the VPSI van was authorized by the agreement, and (3) the mingling of vanpool and personal business put Homer within the scope VPSI’s and the Transportation Authority’s business.  VPSI and the Transportation Authority argue that, as a matter of law, Homer was not within the course and scope of the vanpool agreement at the time of the accident because the accident occurred several hours after the oil change, on an entirely different route from the one he traveled to get to Decatur, and while he was on purely personal business. 

It was undisputed that the accident happened on a Saturday, outside Homer’s Monday through Friday commuting period.  The summary judgment evidence included excerpts from Homer’s deposition to the effect that he needed to get the van serviced that day and was on “vanpool business that day.”  The Kwik Lube was where he normally got the oil changed.  However, he further testified that picking up the grandchildren in Decatur and taking them back to Forestburg to spend the night was “prearranged”; that the route he took to allow the children to see the Santa Claus display was not on his route home; and that he was on “personal business” at the time of the accident, not on any business for VPSI or the Transportation Authority.  VPSI’s summary judgment evidence included deposition testimony of Michele Saye, VPSI’s regional manager, that VPSI had an account with the Kwik Lube in Decatur.  But, she said, it was up to the driver to have maintenance performed at an approved facility whenever he “deemed it necessary.”  It is undisputed that the van was owned by VPSI and leased to the Transportation Authority.  When it is proved that the vehicle involved in an accident was owned by the defendant and the driver was an employee regularly employed by the defendant, a presumption arises that the driver was acting within the course and scope of his employment when the accident occurs.  
Robertson Tank Lines, Inc
., 468 S.W.2d at 357; 
Morris v. JTM Materials, Inc
., 78 S.W.3d 28, 47 (Tex. App.—Fort Worth 2002, no pet.); 
Gant v. Dumas Glass & Mirror, Inc
., 935 S.W.2d 202, 212 (Tex. App.—Amarillo 1996, no writ).  The presumption arises from the fact of ownership by the employer and employment ofy the driver.
  Robertson Tank Lines, Inc
., 468 S.W.2d at 357.    

The presumption is rebutted by evidence that the driver has turned aside, even briefly, for a “personal errand” and has not yet returned to his mission.  
See Morris, 
78 S.W.3d at 47 
(presumption rebutted where employee, whom employer  instructed to drive tractor-trailer from home to yard for maintenance, went to sister’s house first on personal errand and was leaving her house to continue to maintenance yard when accident occurred); 
Gant,
 935 S.W.2d at 212 (presumption rebutted by employee’s testimony he was returning from personal business of eating lunch en route to work); 
J & C Drilling Co.
, 866 S.W.2d at 636 (evidence employee had left site to go get something to eat in another town and accident occurred as he was returning to site rebutted presumption); 
see also Andrews v. Houston Lighting & Power
, 820 S.W.2d 411, 413 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (“[A]n employer is not liable for actions that an employee takes in his own interest and not to further the purpose of carrying out the master’s business.”).    

Once the presumption is rebutted, ownership of the vehicle by the employer and employment of the driver are insufficient to raise the issue of course and scope of employment.  
Robertson Tank Lines, Inc.
, 468 S.W.2d at 358.  The presumption is merely a rule of procedure and “vanishes” when evidence to the contrary is presented
.  Id.
; 
see also Green v. Ransor, Inc., 
175 S.W.3d 513, 516 (Tex. App.—Fort Worth 2005, no pet.) (discussing effect of presumption).  The burden is then on the plaintiff to produce evidence that the driver was in the course and scope of his employment
.  Robertson Tank Lines, Inc.,
 468 S.W.2d at 358
; J & C Drilling Co., 
866 S.W.2d at 636.   

Here, any presumption that Homer was within the course and scope of employment was rebutted by undisputed evidence that he was on personal business for the three hours prior to the accident.  However, Linda argues that the summary judgment evidence established or at least raised fact issues of mixed or dual purposes for Homer’s trip because he had the van serviced at Decatur during his trip in accordance with his contractual duty to maintain the vehicle.  Linda  urges that this business purpose for the trip brought him within the course and scope of his employment at the time of the accident under the principle that if the purpose of serving the master’s business actuates the servant to “any appreciable extent,” his acts are within the scope of his employment.  
See Howard v. Am. Paper Stock Co.
, 523 S.W.2d 744, 747 (Tex. Civ. App.—Fort Worth 1975), 
reformed and aff’d, 
528 S.W.2d 576 (Tex. 1975) (holding truck driver who was pursuing motorist for personal reason but did not deviate from route to return to employer’s business was serving employer’s business to “appreciable extent” and thus within course and scope); 
Dictaphone Corp. v. Torrealba
, 520 S.W.2d 869, 872 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref’d n.r.e.) (holding employee within course and scope at time of accident despite stopping to cash check for business trip before leaving town and leaving early for trip partly for convenience);
 see also Arbelaez
, 149 S.W.3d at 722 (holding fact issue on course and scope raised by evidence employee was complying with employer’s request to make “breakfast run” that benefitted both employee and employer);
 Mayes v. Goodyear Tire & Rubber Co., 
144 S.W.3d 50, 53, 56 (Tex. App.—Houston [1st Dist.] 2004, pet. filed) (reversing summary judgment for Goodyear where, although evidence showed employee driving Goodyear truck spent night at father’s house in Houston and was on his way to buy cigarettes and go home and change clothes before commuting to work in Bryan, there was also evidence that he was carrying load of Goodyear tires for delivery that morning)
.
(footnote: 2)
 The cases Linda relies on involved simultaneously mingled or mixed purposes that are being pursued at the very time of the accident
 and are, thus, distinguishable from 
this case, in which Homer had long since
 completed
 his business task of servicing the van over three hours before the accident.  In those intervening hours, he and Linda had pursued purely personal errands including shopping, eating lunch,  waiting for and picking up their grandchildren, and driving several miles down a different road to a different town to watch Santa loading his reindeer before heading home. 

 Linda contends that the “personal errand” rule, however, only excludes course and scope as to that portion of the trip that relates to the personal errand and that, at worst, Homer had completed his personal errands and “resumed” the business purpose of his trip at the time of the accident.  Her reasoning is that the trip was “contractually compelled” to perform maintenance on the vehicle, and thus necessarily encompassed both a trip to Decatur and back, and that Homer was on the “very same road” required to complete his trip at the time of the accident.  We disagree for three reasons.

First, according to Homer’s own description of his route to and from Decatur, he had not yet returned to the “very same road” required to return to Forestburg from his trip but was on a different highway coming from a different direction and from a different town.  Homer was still on the road from Stillwell and had not reached the turnoff to the Alvord highway when the accident occurred.   

Second, the summary judgment evidence established that the “prearranged” purpose of Homer’s trip was to pick up his grandchildren to spend the night, a purely personal errand.  In contrast, there is no summary judgment evidence that stopping at the Kwik Lube to get the vehicle serviced was a dual purpose for the trip rather than simply an afterthought.

Third, and most importantly, Linda acknowledges Homer had actually 
completed
 both the business and personal purposes of his trip and was on his way home when the accident occurred.  At best, Homer’s activity at the time of the accident was analogous to returning home from work, which puts him within the “to and from work” rule.  
See Morris
, 78 S.W.3d at 48 (noting truck driver’s attempt to return equipment to yard analogous to driving to work).  

Even when driving a vehicle furnished by the employer, the employee is generally not in the course and scope while going to and returning from work unless he is directed by his employer or furthering the employer’s business.  
See Upton v. Gensco, Inc., 
962 S.W.2d 620, 622 (Tex. App.—Fort Worth 1997, pet. denied); 
Garcia v. City of Houston
, 799 S.W.2d 496, 499 (Tex. App.—El Paso 1990, writ denied) (holding presumption that employee driving city-owned vehicle was in course and scope vanished when evidence established he was finished with tasks for day and on his way home);
 
Drooker v. Saeilo Motors
, 756 S.W.2d 394, 400 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (affirming summary judgment where employee was driving company vehicle home for dinner); 
Longoria v. Texaco, Inc
., 649 S.W.2d 332, 335 (Tex. App.—Corpus Christi 1983, no writ) (affirming summary judgment for employer where employee using company vehicle had finished work for day and was on way home, although use of vehicle was considered fringe benefit and part of compensation); 
Salmon v. Hinojosa
, 538 S.W.2d 22, 24 (Tex. Civ. App.—San Antonio 1976, no writ)(holding presumption of course and scope rebutted as matter of law by evidence that employee was merely returning from home to work).  

There is no summary judgment evidence that the trip to Decatur was compelled that day for any scheduled maintenance nor by any direction of VPSI. To the contrary, the only summary judgment evidence reflected that Homer could have maintenance performed at his convenience at a number of locations. We hold that, as a matter of law, Homer was not in the course and scope of employment when he hydroplaned off the road and into a tree several miles off of his original route to Decatur while returning home from pursuing purely personal interests over three hours after having the van serviced.      

Contractual Control

Linda’s principal contention in this appeal, to which virtually all of her argument is directed, is that regardless of how the relationship between Homer, VPSI, and the Transporation Authority is characterized, whether as employment, agency, or joint enterprise, VPSI and the Transportation Authority retained contractual control over his operation of the van by virtue of the three-party agreement, subjecting them to vicarious liability for his negligence.  In her fourth amended petition and response to VPSI’s and the Transportation Authority’s motions for summary judgment, Linda pleaded that those Defendants retained such a degree of control over Homer’s operation and maintenance of the van as to create a duty based on Section 414 of the Restatement (Second) of Torts.   

We first note that the long-standing common-law rule in Texas, as stated in Section 409 of the Restatement (Second) of Torts, is that “the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the [independent] contractor or his servants.”  
Restatement (Second) of Torts 
§409 (1965); 
see, e.g., Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999); 
Redinger v. Living, Inc
., 689 S.W.2d 415, 418 (Tex. 1985); 
Abalos v. Oil Dev. Co. of Tex.
, 544 S.W.2d 627, 631 (Tex. 1976). 
 
However, in 
Redinger,
 the supreme court adopted the rule stated in the Restatement (Second) of Torts, Section 414 that if the employer retains a right of control over the manner in which the independent contractor performs its work, a duty may arise on the part of the employer to exercise that control in a reasonable manner. 
 
Redinger
, 689 S.W.2d at 418 (holding general contractor liable for negligence in supervising subcontractor’s employee where general contractor retained right to direct order in which work was done and to forbid the work being done in a dangerous manner, adopting 
Restatement (Second) of Torts 
§414 (1965)).  This rule applies where the employer retains some control over the manner in which the work is performed, but not the degree of control that would subject him to liability as a master.  
Redinger
, 689 S.W.2d at 418; 
Restatement (Second) of Torts 
§ 414, cmt. a (1965)).

VPSI and the Transportation Authority argue that because Linda has not appealed the summary judgments as to her direct negligence claim, she is precluded from raising this theory on appeal because liability under this theory is based upon direct negligence of the employer.  The Restatement does treat this type of liability as direct negligence, rather than vicarious liability.  
Restatement (Second) of Torts 
§ 414, cmt. a (“Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this section.”).  

Section 414 is contained in Chapter 15, Topic 1 of the Restatement, entitled “Harm Caused
 by Fault of Employers 
of Independent Contractors.”  
Id
. (emphasis added); 
see also 
Ch. 15, Topic 1, Introductory Notes (1965) (stating in such a case “[t]he employer’s liability must be based upon 
his own personal negligence 
in failing to exercise reasonable care . . . such control over doing of the work as he retains to himself.” (emphasis added)); 
accord Redinger
, 689 S.W.2d at 418 (discussing liability in terms of direct negligence, holding general contractor liable who was present to observe danger and gave order that caused plaintiff’s injury); 
see also Hoechst-Celanese Corp. v. Mendez
, 967 S.W.2d 354, 356 (Tex. 1998) (noting duty under Section 414 is imposed on employer who “retain[s] a [right of] control less than that which is necessary to subject him to liability as a master’”).  However, other recent cases do refer to liability under Section 414 as “vicarious.”  
See, e.g., Fifth Club, Inc. v. Ramirez
, 196 S.W.3d 788, 792 (Tex. 2006); 
Clayton W. Williams, Jr., Inc. v. Olivo, 
952 S.W.2d 523, 528 (Tex. 1997) 
(characterizing 
Redinger 
as holding general contractor liable for independent contractor’s negligence).  Because it is unclear whether liability in Texas under Section 414 of the Restatement is characterized as vicarious or direct (or whether it may be either one), and because Linda’s appellate brief addresses this claim in detail, we address it.  

In order for liability to attach, a general contractor’s retained right of control must be more than a general right to order the work to start or stop, to inspect progress, or to receive reports.  
Redinger
, 689 S.W.2d at 418; 
Hoechst-Celanese Corp
., 967 S.W.2d at 356.  The retained right of control must extend to the operative details of the contractor’s work so that he is not free to do the work in his own way.  
Redinger, 
689 S.W.2d at 418.  The duty is commensurate with the degree of control retained by the general contractor.  
Elliott-Williams Co., 
9 S.W.3d at 803.  Additionally, such liability exists only when the retained control relates to the injury-producing activity itself.  
Clayton W. Williams, Jr., Inc., 
952 S.W.2d at 528 (holding employer’s supervisory control must relate to condition or activity that caused injury)
; Hoechst-Celanese Corp., 
967 S.W.2d at 357 (requiring “nexus” between retained supervisory control and condition or activity that caused injury).
     

The employer may retain the right of control over an independent contractor in two ways, by contract or by actual exercise of control. 
 Shell Oil Co. v. Khan, 
138 S.W.3d 288, 292 (Tex. 2004);
 Dow Chem. Co. v. Bright, 
89 S.W.3d 602, 607 (Tex. 2002); 
Lee Lewis Constr.
, 
Inc
. 
v. Harrison
, 70 S.W.3d 778, 783 (Tex. 2001).  Whether the employer retained the right of control by contractual assumption is a question of law, whereas retention by actual exercise of control is generally a question of fact for the jury.  
Shell Oil Co., 
138 S.W.3d at 292
; Dow Chem. Co., 
89 S.W.3d at 607; 
Lee Lewis Constr.
, 70 S.W.3d at 783.    

Linda does not contend that VPSI or the Transportation Authority was exercising actual control over Homer’s activities at the time of the accident.  Therefore, the issue is whether VPSI and the Transportation Authority retained a contractual right of control over his activities sufficient to impose a duty on those parties to others on the highway.  Linda argues that sufficient right of control was retained under the three-party agreement, which authorized Homer’s personal use of the van and established detailed rules on how the van must be operated, even when the van was being used for personal purposes.  Specifically, Linda references the contract’s requirement that Homer participate in a “basic driver training/safety awareness orientation,” and “operate the vehicle in accordance with all applicable laws, ordinances, rules and regulations.”  She also notes that the program imposed additional rules including “safety tips” for operating the van such as: adjust seat and mirrors before driving; allow more room from the curb in making a turn; use assigned rear passengers to assist and guide in backing; always back slowly; use turn signals; in case of skid, do not lock brakes; wear seat belts at all times; and avoid excessive speed.  Linda then again points out that Homer was subject to being immediately terminated if he failed to comply because the Transportation Authority retained absolute right to terminate on thirty days notice or less if VPSI waived the notice requirement.  She reasons that because the contractual right of control of VPSI and the Transportation Authority extended to his personal use, vicarious liability of those parties based upon that retention of contractual control should also be extended to his activities during personal use.  We disagree.  

An employer of an independent contractor does not incur a duty of care under Restatement Section 414 merely by requiring the independent contractor to comply with the employer’s standard safety practices and applicable laws.  
Hoechst-Celanese Corp
., 967 S.W.2d at 357 (holding defendant’s insistence that independent contractor observe and comply with federal laws, safety guidelines and standard safety precautions did not impose unqualified duty of care to ensure contractor’s employees did nothing unsafe);
 Johnson v. Scott Fetzer Co., 
124 S.W.3d 257, 266 (Tex. App.—Fort Worth 2003, pet. denied) (holding contractual requirement that distributors follow manufacturer’s sexual harassment policies not sufficient retention of control to impose liability for dealer’s harassment on manufacturer); 
Victoria Elec. Coop., Inc. v. Williams
, 100 S.W.3d 323, 329 (Tex. App.— San Antonio 2002, pet. denied) (holding utility’s contractual right to require independent contractor to comply with applicable federal, State, and municipal safety laws and codes and utility’s safety manual not sufficient to impose duty on utility to ensure safety of traveling public for activity of independent contractor in transporting utility poles on highway).  

Additionally, a contracting party’s right to terminate or “fire an independent contractor for non-compliance [with contract provisions] does not create liability for everything the independent contractor does (or fails to do).”  
Shell Oil Co.
, 138 S.W.3d at 293 (holding right of oil company to force dealer to hire security guard by threatening to terminate dealership did not create liability on company for dealer’s failure to do so); 
Dow Chem
. 
Co.
, 89 S.W.3d at 607-08 (holding right to require compliance with safety regulations and to order work stopped if employer had known of violation did not impose duty on employer for independent contractor’s negligence).
  

While a contracting party may be liable if it had knowledge of a violation of law or a safety rule by an independent contractor and failed to intervene to correct it, Linda has never alleged nor does she now contend that VPSI or the Transportation Authority knew of Homer’s alleged negligence
.  See, e.g., Shell Oil Co.
, 138 S.W.3d at 293 (affirming no-evidence summary judgment for oil company absent evidence it knew dealer failed to train its employees as required by contract); 
Koch Refining Co. v. Chapa
, 11 S.W.3d 155, 157 (Tex. 1999) (holding general contractor not liable unless contract gave it right to take action upon learning that subcontractor’s employees acted unsafely); 
Hoechst-Celanese Corp.
, 967 S.W.2d at 357 (holding employer who is aware independent contractor routinely ignores applicable federal guidelines and company policies related to safety may owe duty to require corrective measures or cancel contract).  Otherwise, at most, a general contractor owes a duty that any contractual safety requirements and procedures not unreasonably increase, rather than decrease, the probability and severity of injury.  
Dow Chem. Co.
, 89 S.W.3d at 608 (citing 
Hoechst-Celanese Corp.
, 967 S.W.2d at 358).  

Moreover, Linda acknowledges that “neither VPSI nor the Transportation Authority could compel Homer Bell . . . to follow their driving rules nor could they have forced Homer Bell to slow down on that faithful [sic] rainy afternoon.”  To hold that the imposing of contractual safety requirements, alone, on independent contractors somehow subjects the employer either to a duty to prevent an independent contractor’s negligent conduct or to liability for an independent contractor’s negligence in failing to comply with safety requirements would deter general contractors from imposing even minimum safety rules and requirements.
  Dow Chem. Co., 
89 S.W.3d at 608
.
(footnote: 3) 

We hold that, as a matter of law, neither VPSI nor the Transportation Authority retained sufficient contractual right of control to impose an independent duty on them to members of the traveling public, including Linda, to ensure that Homer did not drive at an excessive rate of speed on the highway.  Nor did those parties retain sufficient right of control to subject them to vicarious liability for Homer’s negligence.  

Joint enterprise

The essential elements of joint enterprise are (1) an agreement among the members of the group, (2) a common purpose, (3) a common pecuniary interest, and (4) an equal right of control over the enterprise.  
St. Joseph Hosp.
, 94 S.W.3d at 525 (citing 
Restatement (Second) of Torts 
§ 491 (1965)).  VPSI’s and the Transportation Authority’s motions for summary judgment challenged the latter two elements.

A “common pecuniary interest” is a monetary interest among the members of the group and shared without special or distinguishing characteristics.  
Id.
 at 531.  The summary judgment evidence conclusively establishes that there was no monetary interest shared among VPSI, the Transportation Authority, and Homer without special or distinguishing characteristics.  Indeed, the summary judgment evidence shows that Homer had no pecuniary interest in the vanpool agreement whatsoever.  Linda’s attempt to cast his rights to commute in the van and to use it for personal business are unavailing as “pecuniary” interests; these benefits were strictly nonmonetary and, moreover, were not shared in common with VPSI and the Transportation Authority.

Nor did Homer share with VPSI and the Transportation Authority an equal right of control over the enterprise.  The very summary judgment evidence upon which Linda relies to show Homer’s lack of control in the respondeat superior context proves that his control was not equal to that of VPSI and the Transportation Authority.  Moreover, the summary judgment evidence shows that Homer was but a small part of a much larger enterprise involving VPSI, the Transportation Authority, and many other vanpool drivers—an enterprise over which he had no control whatsoever.

We hold that the summary judgment evidence conclusively negates the common-pecuniary-interest and equal-right-of-control elements of Linda’s joint enterprise theory.  Therefore, the trial court did not err by granting VPSI’s and the Transportation Authority’s motions for summary judgment on joint enterprise or by denying Linda’s motion for partial summary judgment on the same theory.

Conclusion

We overrule Linda’s first three issues.  We do not reach her fourth issue, in which she argues that she provided timely notice to the Transportation Authority under the Tort Claims Act.  We therefore affirm the trial court’s judgment, and we affirm the trial court’s denial of Linda’s motion for summary judgment.

ANNE GARDNER

JUSTICE

PANEL A: DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED:  October 5, 2006

FOOTNOTES
1:
None of the parties separately argues that the terms “agent” or “volunteer” in the three-party agreement are determinative.  Indeed, a party may be an agent without subjecting his principal to vicarious liability. To impose vicarious liability on the principal, the proper inquiry for agency is whether the agent was acting within the scope of the agency relationship at the time of the wrongful act.  
See Celtic Life Ins. Co. v. Coats
, 885 S.W.2d 96, 100 (Tex. 1994). Likewise, that one is working as a “volunteer” does not preclude respondeat superior liability, at least as to private parties, if the employer had a right to direct the duties of the volunteer and an interest in the work to be accomplished, accepted direct or indirect benefit from the work, and had a right to fire or replace the volunteer.  
Doe v. Boys Clubs of Greater Dallas, Inc
., 868 S.W.2d 942, 950 (Tex. App.—Amarillo 1994), 
aff’d
, 907 S.W.2d 472 (Tex. 1995); 
see
 
Restatment (Second) of Agency 
§ 225 (1958).    

2:
See also 
Restatement (Second) of Agency 
§ 236 (1958) (“Conduct may be within the scope of employment although done in part to serve the purposes of the servant or of a third person[.]”).  If the purpose of serving the master’s business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service, as where the servant drives rapidly, partly to deliver his master’s goods, but chiefly in order to terminate the day’s work or to return the vehicle to the master’s premises.” 
 Id
., cmt. b at 523-24.  

3:
The two cases Linda relies on for the proposition that vicarious liability exists by reason of the contractual control retained by VPSI and the Transportation Authority are inapposite.  
Texas Department of Transportation v. Able
, 35 S.W.3d 608 (Tex. 2000), involved whether two governmental units possessed an equal right “to a voice in the direction of an enterprise” as a necessary element of ”joint enterprise” liability. 
 Murk v. Scheele
, 120 S.W.3d 865 (Tex. 2003), involved the extent of control by a governmental unit sufficient to bring a physician within the definition of “employee” under the Texas Tort Claims Act.  The nature of the control required either for joint enterprise liability or sovereign immunity is entirely different from the control necessary to impose vicarious liability for negligence of an independent contractor.