02-11-007-CV 02-11-017-CV 02-11-018-CV








 




 
 
 
 
 
  
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-11-00007-CV

 




 
 
 Jeffery A. Bell and Wanda E. Bell
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Denbury Resources, Inc., Denbury Onshore, LLC, and
 Denbury Holdings, Inc.
 
 
  
 
 
 APPELLEES
 
 




 

AND

 

NO. 02-11-00017-CV

 




 
 
 JEFFERY
 A. BELL AND WANDA E. BELL
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 CHESAPEAKE
 ENERGY CORPORATION AND CHESAPEAKE OPERATING, INC.
 
 
  
 
 
 APPELLEES
 
 




 

AND

 

NO. 02-11-00018-CV

 




 
 
 JEFFERY
 A. BELL AND WANDA E. BELL
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 DICKEY
 PATE, JR. AND CD CONSULTING & OPERATING COMPANY
 
 
  
 
 
 APPELLEES
 
 




----------

FROM THE 271st
District Court OF Wise COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          On
the court=s own motion, the above causes are
hereby consolidated for purposes of disposing of these related summary judgment
appeals in a single opinion.  Each cause shall continue to bear its respective
cause number.

I.  Introduction and Background

          Express
Energy Services Operating, LP fired Appellant Jeffery A. Bell after Express
received complaints from several of its customers’ “company men” that they no
longer wanted Bell performing sales at their well sites.  Bell and his wife,
Appellant Wanda E. Bell, then sued Appellees Denbury Resources, Inc.; Denbury
Onshore, LLC; Denbury Holdings, Inc. (collectively Denbury); Chesapeake Energy
Corporation; Chesapeake Operating, Inc. (collectively Chesapeake); Dickey Pate,
Jr.; CD Consulting & Operating Company; and a slew of other individuals and
entities for defamation, intentional infliction of emotional distress, civil
conspiracy, gross negligence, and loss of consortium.  The trial court granted
summary judgment in favor of each Appellee.[2]  In a single issue divided
into five subissues, Appellants argue in each appeal that the trial court erred
by granting the summary judgments.  We will affirm the trial court’s orders in
all three causes.

II.  Standards of Review

          After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.  Tex. R. Civ. P. 166a(i).  The trial court must grant the motion
unless the nonmovant produces summary judgment evidence that raises a genuine
issue of material fact.  See Tex. R. Civ. P. 166a(i) & cmt.; Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

          Under
the traditional summary judgment standard, the issue on appeal is whether the
movant met the summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law.  Tex. R. Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors,
Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence that raises a
fact issue.  Van v. Pena, 990 S.W.2d 751, 753 (Tex. 1999).  We must
consider whether reasonable and fair-minded jurors could differ in their
conclusions in light of all of the evidence presented.  See Wal-Mart Stores,
Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller v.
Wilson, 168 S.W.3d 802, 822–24 (Tex. 2005).

III. 
Defamation

          In
their first subissues, Appellants argue that the trial court erred by granting
summary judgment for Appellees on Appellants’ claims for defamation.  To
maintain a defamation cause of action, the plaintiff must prove that the
defendant (1) published a statement, (2) that was defamatory
concerning the plaintiff, (3) while acting with negligence, if the
plaintiff was a private individual, regarding the truth of the statement.  See
WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998), cert. denied,
526 U.S. 1051 (1999).

          A.      Chesapeake

          Chesapeake
argued in its hybrid motion for summary judgment that Appellants had no
evidence that Chesapeake made a defamatory statement about Bell.  Responding to
that ground on appeal, Appellants argue that “Chesapeake company men had called
in to Express and complained about Bell and instructed Express not to send Bell
back out to their jobsites because Bell had had some problems or issues when he
worked for Premiere and Frank’s Casing.”  To support this contention, Appellants
direct us to the deposition testimony of Richard Wiggins, the district manager
for Express who carried out Bell’s termination from Express.  The following
exchange occurred at Wiggins’s deposition:

Q.      Okay.  And
why did Chesapeake not want Jeff Bell on-site?

 

A.      The only thing
that I can recall that there was a statement made is there was mistakes made by
him, or issues outstanding when he worked for Premiere and also Frank’s Casing,
and they did not want him on the location.

 

Wiggins
could not identify specifically who had told him this, and he did not know why
Chesapeake did not want Bell at the well site because “[t]he company man didn’t
actually tell [Wiggins] any specific reason why he didn’t want [Bell] there.”      We
must decide whether the words used by the unidentified Chesapeake “company man”
are reasonably capable of a defamatory meaning, which is a question of law.  See
Musser v. Smith Protective Serv., Inc., 723 S.W.2d 653, 655 (Tex. 1987); see
also Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000).  A
statement is defamatory if it tends to injure the person’s reputation, exposing
the person to public hatred, contempt, ridicule, or financial injury, or it if
tends to impeach that person’s honesty, integrity, or virtue.  See Tex.
Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011) (addressing libel).  “To
be defamatory, a statement should be derogatory, degrading, and somewhat
shocking, and contain ‘element[s] of personal disgrace.’”  Means v. ABCABCO,
Inc., 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.).  When
considering whether a statement is defamatory, we construe the statement as a
whole, in light of the surrounding circumstances, based on how a person of
ordinary intelligence would perceive the entire statement.  See Musser,
723 S.W.2d at 655.

          Here,
Appellants did not—and indeed could not—identify any alleged defamatory statement
made by the Chesapeake “company man” because Wiggins was not told by the
“company man” why he did not want Bell at the well site.  To the extent that
Appellants rely on the statement made by Wiggins at his deposition as evidence
that Chesapeake made a defamatory statement about Bell, the statement that
there were “issues outstanding when [Bell] worked for Premiere and also Frank’s
Casing” is not defamatory as a matter of law because it is not reasonably
capable of a defamatory meaning, construing it in light of the surrounding
circumstances and based on how a person of ordinary intelligence would perceive
it.  Accordingly, we hold that the trial court did not err by granting summary
judgment for Chesapeake on Appellants’ defamation claim because there is no
evidence that Chesapeake made a defamatory statement about Bell.  We overrule
Appellants’ first subissue in cause 02-11-00017-CV.

          B.      Pate
and CD

          Pate
and CD argued in their no-evidence motion for summary judgment that Appellants
had no evidence that Pate and CD made a defamatory statement about Bell.  Responding
to that ground on appeal, Appellants contend the following:

          Pate
contacted Express and verbally instructed and advised Express:  1) not to
send Bell back out to his jobsite again and 2) the reason Pate stated that
he did not want Bell on his jobsite was because Bell had made
misrepresentations to three company men to make sales when Bell worked for a
previous employer, Premiere, Inc.

 

To
support this contention, Appellants direct us to the portion of Bell’s
deposition testimony in which he explained the circumstances surrounding his
understanding of the alleged defamatory statements made by Pate.  Bell
testified that he was fired shortly after either Pate or Gary Cherry called
Express and made statements to either Wiggins, Randy Davis, or Mike Byrd.  However,
when repeatedly questioned about the substance of the statements, Bell
confirmed several times that Wiggins did not tell him what the statements were.[3]
 Appellants consequently failed to identify any evidence of a defamatory statement
made by Pate about Bell.

          Appellants
additionally direct us to the “Personnel Action Form” documenting Bell’s discharge,
which states, “Jeff[’s] salesmanship has not shown to be beneficial to Express
Energy or him[]self.  Several customer[s—] Quicksilver[,] Denbury[, and]
Chesapeak[e—]prefer not to have him.  Could be personal issues or previous
employer slander issues!”  This document is no evidence of a defamatory
statement made by Pate of Bell, even when considered in light of the
surrounding circumstances.

          We
hold that the trial court did not err by granting summary judgment for Pate and
CD on Appellants’ defamation claim because there is no evidence that Pate made
a defamatory statement about Bell.  We overrule Appellants’ first subissue in
cause 02-11-00018-CV.

          C.      Denbury

          Denbury
argued below that it was entitled to summary judgment on Appellants’ defamation
claim because Denbury is not vicariously liable for any alleged torts,
including defamation, committed by Kendall Bennett and Michael Barton, two
drilling consultants who worked with Denbury.  Denbury repeats this argument on
appeal, explaining that it conclusively proved that both Bennett and Barton entered
into agreements that expressly identified both as independent contractors of
Denbury.

          “The
common law has long recognized that liability for one person’s fault may be
imputed to another who is himself entirely without fault solely because of the
relationship between them.”  St. Joseph Hosp. v. Wolff, 94 S.W.3d 513,
540 (Tex. 2002).  Paramount among the considerations for determining whether
vicarious liability attaches is if the person being held responsible had a
right to control the activities of the wrongdoer.  Id. at 541.  This
right to control distinguishes independent contractors—who have sole control
over the means and methods of the work to be accomplished—from employees.  See
Baptist Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998).

          Control
can be established in two ways:  a contractual right of control or an
exercise of actual control.  Dow Chem. Co. v. Bright, 89 S.W.3d 602, 606
(Tex. 2002).  A contract between the parties that establishes an independent
contractor relationship is determinative of the parties’ relationship in the
absence of extrinsic evidence indicating that the contract was subterfuge, that
the hiring party exercised control in a manner inconsistent with the contract
provisions, or that the written contract has been modified by subsequent
agreement, either express or implied.  Newspapers, Inc. v. Love, 380
S.W.2d 582, 590–92 (Tex. 1964); Bell v. VPSI, Inc., 205 S.W.3d 706, 713–14
(Tex. App.—Fort Worth 2006, no pet.); Weidner v. Sanchez, 14 S.W.3d 353,
373 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

          Here,
Denbury included as part of its traditional summary judgment evidence a “Master
Service Agreement” entered into between Bennett as “Contractor” and Denbury
Onshore, LLC as “Company” and a “Master Service Agreement” entered into between
Barton as “Contractor” and Denbury Onshore, LLC as “Company.”  Both agreements,
which “apply to all Subsidiary and Affiliated companies of COMPANY,” contain
the following language:

15.1   In the
performance of the work herein contemplated, CONTRACTOR is an independent
CONTRACTOR, with the authority to control and direct the performance of the
details of the work, COMPANY being interested only in the results obtained. . . .

 

Thus,
under the terms of the unambiguous agreements, both Bennett and Barton were
independent contractors of Denbury with the express right to control the
performance of their own work.  The burden shifted to Appellants to come
forward with competent controverting evidence raising a genuine fact issue as
to Denbury’s right of control over Bennett and Barton.  Appellants neither direct
us to any evidence nor argue that Denbury exercised control over Bennett’s and
Barton’s work in a manner inconsistent with the agreements, that the agreements
were subterfuge, or that the agreements were modified in any relevant way.  Accordingly,
Denbury conclusively established that Bennett and Barton were independent
contractors of Denbury and, therefore, that it was not vicariously liable for
Bennett’s and Barton’s alleged defamatory statements about Bell.  We hold that the
trial court did not err by granting Denbury summary judgment on Appellants’
defamation claim, and we overrule Appellants’ first subissue in cause
02-11-00007-CV.

IV.  Intentional Infliction of Emotional Distress

          In
their second subissues, Appellants argue that the trial court erred by granting
Chesapeake and Denbury summary judgment on Appellants’ claims for intentional
infliction of emotional distress (IIED).[4]  IIED is a gap-filler
tort that has no application when the conduct at issue invades some other
legally protected interest.  See Hoffmann-La Roche Inc. v. Zeltwanger,
144 S.W.3d 438, 447 (Tex. 2004) (stating that “[w]here the gravamen of a
plaintiff’s complaint is really another tort, intentional infliction of
emotional distress should not be available” and citing with approval three
defamation cases in which IIED was not available as an independent claim). 
Appellants’ IIED claims must fail because they are based on the same conduct as
Appellants’ defamation claims against Chesapeake and Denbury.  See id.  Appellants
attempt to bypass this fatal deficiency by arguing that an IIED claim is
permitted “when an employee is wrongfully terminated by an employer who is
engaged in conduct ‘bordering on serious criminal acts,’” and they contend that
Chesapeake and Denbury were engaged in an illegal kickback scheme.  Notwithstanding
that Bell was not an employee of Chesapeake or Denbury, we fail to see how
evidence of an alleged kickback scheme somehow alters the fact that the
gravamen of Appellants’ IIED claims are the defamation claims.  Evidence of an
alleged kickback scheme has no relevance whatsoever to any element of
Appellants’ IIED claims or defamation claims.  We hold that the trial court did
not err by granting Chesapeake and Denbury summary judgment on Appellants’ IIED
claims.  We overrule Appellants’ second subissues in causes 02-11-00007-CV and
02-11-00017-CV.

V.  Civil Conspiracy

          In
their third subissues, Appellants argue that the trial court erred by granting
summary judgment for Appellees on Appellants’ claims for civil conspiracy. 
Civil conspiracy is a derivative claim because a defendant’s liability depends
upon its participation in some underlying tort for which the plaintiff seeks to
hold the defendant liable.  Tilton v. Marshall, 925 S.W.2d 672, 681
(Tex. 1996).  Appellants pleaded that Appellees conspired to defame and slander
Bell.  Because the trial court properly granted summary judgment on each of Appellants’
defamation claims, Appellees cannot be liable for the derivative torts of civil
conspiracy with respect to those claims.  See id.  Appellants
additionally contend that Appellees conspired to get Bell fired because he
would not participate in an ongoing kickback scheme, but Appellants did not
plead the kickback scheme as the basis of any type of independent tort or cause
of action that would support their derivative claims for civil conspiracy. 
Accordingly, we overrule Appellants’ third subissues.

VI.  Gross Negligence

          In
their fourth subissues, Appellants argue that the trial court erred by granting
summary judgment for Appellees on Appellants’ claims for gross negligence. 
Appellants contend that “whether the underlying basis of liability against
[Appellees] is defamation or intentional infliction of emotional distress, or
civil conspiracy to commit same, [Appellants’] evidence directly establishes
gross negligence.”  We have held that summary judgment was proper on
Appellants’ claims for defamation, IIED, and civil conspiracy.  Thus, there is
no evidence or “underlying basis” upon which Appellants rely to support their
gross negligence claims.  See Bell v. Bennett, Nos. 02-10-00481-CV,
02-11-00057-CV, 02-11-00063-CV, 2012 WL 858603, at *14 (Tex. App.—Fort Worth
Mar. 15, 2012, no pet.) (mem. op.) (holding same).  Accordingly, the trial
court did not err by granting summary judgment on Appellants’ claims for gross
negligence.  We overrule Appellants’ fourth subissues.

VII.  Loss of Consortium

          In
their fifth subissues, Appellants argue that the trial court erred by granting
summary judgment for Appellees on Wanda’s claims for loss of consortium.  Wanda’s
claims for loss of consortium are derivative of Bell’s claims against Appellees. 
See Motor Express, Inc. v. Rodriguez, 925 S.W.2d 638, 640 (Tex.
1996).  Because summary judgment was proper for Appellees on all of Appellants’
pleaded causes of action, Wanda’s derivative loss of consortium claims likewise
fail.  See id.  We overrule Appellants’ fifth subissues.  We overrule
Appellants’ only issue in each appeal.

VIII.  Conclusion

          Having overruled Appellants’
issue in each appeal, we affirm the trial court’s orders in all three causes.

 

 

BILL MEIER
JUSTICE

 

PANEL:  GARDNER, WALKER, and MEIER, JJ.

 

DELIVERED: 
May 17, 2012









[1]See Tex. R. App. P. 47.4.





[2]Chesapeake, as well as CD and
Pate, filed both traditional and no-evidence motions for summary judgment, and
Denbury filed only a traditional motion for summary judgment.





[3]Wiggins testified in his
deposition that he did not know why the “company men” did not want Bell at the
well site.





[4]Appellants do not
challenge the summary judgment granted in favor of Pate and CD on this ground.