

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00217-CV

———————————————

EAN HOLDINGS, LLC, Appellant

V.

GUILLERMO ARCE, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-291839-17

Before Sudderth, C.J.; Bassel and Walker, JJ.
Opinion by Chief Justice Sudderth
Dissenting Opinion by Justice Walker

# OPINION

This is a motor vehicle collision case. Guillermo Arce sued EAN Holdings, LLC alleging that Anthony Nelson, EAN's employee, acting in the course and scope of his employment for EAN while driving a vehicle owned by EAN, negligently caused Arce's injuries. The jury found in Arce's favor and awarded him substantial damages. The trial court entered judgment on the verdict for Arce against EAN. In its sole issue on appeal, EAN contends that the evidence is neither legally nor factually sufficient to support the jury's verdict that Nelson was acting in the course and scope of his employment at the time of the collision. We hold that the evidence is legally insufficient to support the jury's verdict on course and scope of employment. We therefore sustain EAN's issue, reverse the judgment of the trial court, and render judgment that Arce take nothing.

## A. Background

### (1) Procedural Background

EAN does business as Enterprise Rent-A-Car. Nelson was an EAN branch manager who, on September 29, 2015, was involved in a motor vehicle accident with Arce. At the time of the accident, Nelson was driving home from his branch office in a car owned by EAN.

Arce sued EAN alleging negligent entrustment, joint enterprise, and vicarious liability for Nelson's negligence.[1] The trial court granted summary judgment in favor of EAN on Arce's claims for negligent entrustment and joint enterprise. Thus, only Arce's vicarious liability claim proceeded to trial. The jury found, in response to Question No. 1, that Nelson was in the course and scope of his employment with EAN at the time of the collision. The jury found Nelson 100% causally negligent and awarded Arce substantial damages.

EAN timely filed a motion for judgment notwithstanding the verdict (JNOV) alleging that there was legally and factually insufficient evidence to support the jury's answer to Question 1 regarding course and scope of employment and supplemented its motion with detailed citations to the trial record.[2] After the trial court denied the motion and signed a judgment in Arce's favor, EAN filed its motion for new trial raising the same complaints. The motion for new trial was overruled by operation of law, and EAN timely appealed.

**(2) Factual Background**

Earlier in his career with EAN, Nelson had been permitted use of EAN

---

[1]Arce also sued Nelson, but the trial court granted summary judgment for Nelson on Arce's claims against him on statute-of-limitations grounds.

[2]EAN raised the course-and-scope argument prior to trial in its motion for summary judgment, its amended motion for summary judgment, and its motion for reconsideration of its first amended motion for summary judgment and during trial in a motion for directed verdict.

vehicles for work duties only. After becoming a branch manager, he opted into EAN's corporate personal-use program, which allowed him to use EAN vehicles for personal use. Only EAN employees at the branch manager and higher levels qualified for this optional program. EAN charged Nelson a $200 monthly fee for the program. EAN had determined that the $200 monthly fee was the fair cost of providing personal use of a vehicle.

To enroll in the personal-use program, Nelson filled out a written request that was subject to management approval. By enrolling in the optional personal-use program, Nelson agreed to comply with EAN's driving policy while driving a personal-use vehicle.

As part of this program, Nelson was allowed to drive a car from the Enterprise lot where he worked to his home and back to the Enterprise lot. He could also drive a vehicle on weekends or on his off-duty days for personal use. He could choose any vehicle on the lot and did not drive the same vehicle every day. The personal-use program also offered liability protection for Nelson in the event of a covered claim.

When driving EAN vehicles back to work in the morning, Nelson occasionally filled them with gas or washed them at his own expense. However, he was not doing either of those things at the time of the accident.

4

On the evening in question, Nelson was driving home in an EAN personal-use vehicle after leaving work when he collided with Arce's vehicle.[3] Nelson's plan had been to stop at a Whataburger to get dinner and then to go home. He was not conducting any EAN business at the time of the collision. Although he had his personal cell phone with him, he was not using it at the time of the collision. He had no plans to conduct any EAN business when he arrived home for the evening, and EAN, according to his area supervisor, did not expect him to work from home.[4]

## B. Standard of Review

The standard of review for legal sufficiency is well established and is the same for JNOVs, directed verdicts, summary judgments, and appellate no-evidence review. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Austin Bridge & Road, LP v. Suarez*, 556 S.W.3d 363, 376 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "[W]e determine if legally sufficient evidence supports a finding by 'view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if

[3]The EAN location at which Nelson worked was open until 6:00 p.m. Nelson testified at trial, based on a time stamp on a photo he took shortly after the accident, that he believed the accident occurred "right before 6:23 p.m." In an earlier recorded statement, however, he stated that the time of the accident was around 5:25 p.m.

[4]Although Nelson sometimes performed work tasks from home, usually reviewing and responding to text messages on his personal phone about car inventory planning for the following day, he was not planning to work at home the night of the incident and did not do so. Other than reporting the accident immediately after it occurred, he made no contact with any other EAN employee until the next morning.

reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.'" *Noble Drilling (US) LLC v. Deaver*, 596 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *City of Keller*, 168 S.W.3d at 807). As the *Noble Drilling* court recently recited:

> Evidence of a vital fact's existence is legally insufficient if (a) no evidence in the record supports it, (b) rules of law or of evidence bar the court from giving weight to the only evidence offered to prove it; (c) there is no more than a scintilla of supporting evidence, or (d) the evidence conclusively establishes the converse. *See* [*City of Keller*, 168 S.W.3d] at 810.

*Id.*; *see also Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 618–19 (Tex. App.—Fort Worth 2011, pet. denied). In reviewing the evidence for legal sufficiency, we defer to the jury's reasonable credibility determinations. *See, e.g.*, *City of Keller*, 168 S.W.3d at 820; *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004); *Yetiv v. Comm'n for Lawyer Discipline*, No. 14-17-00666-CV, 2019 WL 1186822, at *5 (Tex. App.—Houston [14th Dist.] Mar. 14, 2019, no pet.) (mem. op.). When we sustain a legal-sufficiency issue, we must render judgment for the appellant because that is the judgment the trial court should have rendered. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986); *see* Tex. R. App. P. 43.3.

## C. Substantive Law on Course and Scope of Employment

The common-law doctrine of respondeat superior, or vicarious liability, is an exception to the general rule that a person has no duty to control another's conduct. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). It provides that

6

"liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *Id.* at 130 (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002)).

To establish that an employer is vicariously liable for an employee's negligence, a plaintiff must prove that, at the time of the negligent conduct, the employee was acting in the course and scope of his employment. *Id.* at 131. In the "course and scope of employment" means, at a minimum, that the employee's conduct was within the scope of the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which he was hired. *Id.*; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment. If an employee "deviates from the performance of his duties for his own purposes," the employer is not responsible for what occurs. *Painter*, 561 S.W.3d at 131; *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 757.

**(1) The Coming-and-Going Rule**

One particular rule that has developed in the context of course-and-scope-of-employment law is the "coming-and-going rule." As noted by the Supreme Court of Texas in *Painter*:

> We have long recognized a version of this principle [the coming-and-going rule] in the workers'-compensation context, holding that as "a general rule an injury received while using the public streets and highways in going to or returning from the place of employment is not compensable because not incurred in the course of employment." *Tex.*

7

*Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963); *see also* T[ex]. L[ab]. C[ode Ann.] § 401.011(12) (defining "(c)ourse and scope of employment" in Workers' Compensation Act to exclude, with limited exceptions, "transportation to and from the place of employment"). The courts of appeals, as a matter of course, have applied the rule in the vicarious-liability context, and we see no reason to disturb that extension. *E.g.*, *Mancil v. Stroud*, No. 11-13-00354-CV, 2016 WL 932949, at *3 (Tex. App.—Eastland Mar[.] 10, 2016, no pet.)[ (mem. op.)]; *Chevron USA, Inc. v. Lee*, 847 S.W.2d 354, 355 (Tex. App.—El Paso 1993, no writ).

561 S.W.3d at 136.

Under this rule, in the third-party liability context, the criteria for course and scope of employment are generally not met when an employee is traveling to or from work. *Id.* at 139 ("We confirm that the coming-and-going rule, under which an employee is generally not acting within the scope of his employment when traveling to and from work, applies in the vicarious-liability context.").

**(2) Rebuttable Presumption if Vehicle is Company-Owned**

Another principle that has developed in vicarious-liability law is a rebuttable presumption that an employee driving a company-owned vehicle is presumed to be in the course and scope of his employment while driving the vehicle. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971). However, this presumption "is not evidence but rather a rule of procedure . . . that is overcome when positive evidence to the contrary is introduced." *Green v. Ransor, Inc.*, 175 S.W.3d 513, 516 (Tex. App.—Fort Worth 2005, no pet.). In other words, "if there is evidence that the driver was on a personal errand, or otherwise not in the furtherance of his

8

employer's business, the presumption vanishes." *Mejia-Rosa v. John Moore Servs.*, No. 01-17-00955-CV, 2019 WL 3330972, at *7 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.) (noting that "[the employee's] affidavit and deposition testimony effectively rebutted the presumption by establishing that he was returning home from work and was not acting in furtherance of JMS's business when the accident occurred"). Once the presumption is "rebutted by positive evidence to the contrary," the fact that the driver was in a vehicle owned by his employer "do[es] not constitute probative evidence" that the employee was acting within the scope of his employment. *Robertson Tank Lines*, 468 S.W.2d at 358; *see also Williams v. Great W. Distrib. Co.*, No. 12-16-00095-CV, 2016 WL 7322802, at *3 (Tex. App.—Tyler Dec. 16, 2016, no pet.) (mem. op.) ("Where there is evidence that the driver was on a personal errand, or otherwise not in the furtherance of his employer's business, ownership of the vehicle and the fact that the driver was an employee of the defendant are insufficient to raise a fact issue regarding scope of employment."); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 47–48 (Tex. App.—Fort Worth 2002, no pet.) (holding evidence that an employee was on a personal errand at the time of an accident effectively "rebuts the presumption that he was in the course and scope of his employment"); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex. App.—San Antonio 1993, no writ) (holding appellee failed to raise fact issue regarding course and scope of employment where the employee, who was in a company vehicle and on 24-hour call, got into an accident returning to a worksite after having left to have dinner

9

in another town). After the presumption vanishes, the burden shifts to the plaintiff to produce "other evidence that [the employee] was in the course and scope of his employment." *Mejia-Rosa*, 2019 WL 3330972, at \*7.

### D. Analysis

#### (1) The Coming-and-Going Rule Applies

EAN contends that Nelson was not in the course and scope of his employment at the time of the accident, and we agree. The evidence is uncontroverted that Nelson was on his way home from work with an intermediate stop to pick up dinner for himself at a Whataburger restaurant when the accident occurred. This circumstance falls within the ambit of the "coming-and-going" rule.

Arce argues that Nelson's Enterprise branch office was open until 6:00 p.m., that his normal business hours ran until 6:00 p.m., and later at times, and that there was evidence that the collision occurred at 5:25 p.m., a time when Nelson would often have been working. While evidence conflicts about the exact time of the collision, it is uncontroverted that Nelson had left his work location and was on his way to get dinner and to go home whenever the collision occurred. Regardless of the timing, he was not at work or otherwise performing duties for EAN when the collision occurred. He was en route to get dinner and then to go home; he was not traveling in "the performance of regular or specifically assigned duties for the benefit of his employer." *Painter*, 561 S.W.3d at 139. Thus, applying the "coming-and-going" rule, we hold that as a matter of law, Nelson was not in the course and scope of his employment at the

time of the collision. *See Painter*, 561 S.W.3d at 139; *Mejia-Rosa*, 2019 WL 3330972, at *7.

### (2) Nelson's Working at Home Sometimes Does Not Raise a Fact Issue

Arce, in his search for evidence to support the verdict, points to Nelson's episodic conduct of transacting business from his home, i.e., using his cell phone to send and receive text messages for EAN business matters, such as determining the number of cars available for the next day. In reviewing this evidence, we are guided by the rule that the evidence must show that the allegedly negligent conduct actually occurred while the employee was acting in the course and scope of employment. *See Mejia-Rosa*, 2019 WL 3330972, at *7–8 (holding evidence that employee was on way home from work, with one presumed business-related cell phone call thirty minutes before the accident and two cell phone calls thirty minutes after the accident, was insufficient to create a fact issue regarding course and scope at the time of the accident); *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Baker*, 401 S.W.3d 246, 261 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("The general rule for respondeat superior requires . . . that the employee be acting in the course and scope of employment when the negligence occurs."). Not even an intent to work at home while transporting a briefcase containing work papers home is sufficient to raise a fact issue on course and scope of employment when an employee is involved in a car accident en route to her home. *Direkly v. ARA Devcon, Inc.*, 866 S.W.2d 652, 654–

55 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). As the *Direkly* court duly noted,

> Appellants argue that *Dictaphone*[5] applies to Wodtke [(appellee's employee)] because she intended to work when she got home. This alone, however, is insufficient to keep Wodtke in the course and scope of her employment. To hold otherwise would mean that anyone who brings home her briefcase to do some work is within the course and scope of employment. This is not the law.

866 S.W.2d at 654; *see also Farrell v. Com. Structures & Interiors, Inc.*, No. 05-02-00031-CV, 2002 WL 31411022, at *1 (Tex. App.—Dallas Oct. 28, 2002, no pet.) (not designated for publication) (holding evidence that employee was traveling from home to jobsite carrying job-related equipment constituted no evidence that he was in the course and scope of his employment).

The same conclusion must be reached here: Nelson's negligent conduct did not occur while he was acting in the course and scope of his employment with EAN. It occurred when he was on his way home from work. Not only did Nelson not intend to perform any employer-related work at home on the evening in question; he did not do so. Nelson's working at home in the past was insufficient to prove that he was acting in the course and scope of his employment at the time of the accident.

---

[5]In *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.), the court held that a salesperson who detoured to cash a check while on his way out of town for business and who had a wreck while on the detour remained in the course and scope of his employment. *Id.* at 871–72.

Nelson's situation is more akin to cases where employees are on call when an incident occurs but are not engaged in the employer's business at the time of the incident. Courts have held that such employees are not acting within the course and scope of their employment. *See, e.g.*, *Atl. Indus., Inc. v. Blair*, 457 S.W.3d 511, 517 (Tex. App.—El Paso 2014) (holding evidence that employee was on call and driving a truck bearing the company logo insufficient to support determination that he was within course and scope of his employment at time of accident), *rev'd on other grounds*, 482 S.W.3d 57 (Tex. 2016); *J & C Drilling Co.*, 866 S.W.2d at 637 (holding fact that employee involved in accident while driving company car was required to be on 24-hour call was "not sufficient to raise an issue of course and scope"). Following the rationale of these cases, we hold Nelson's episodic conduct of transacting business from his home was insufficient to support a finding of course and scope of employment in this instance.

**(3) Nelson's Driving a Company Car Was Not Necessary from EAN's Perspective**

Having no direct evidence that Nelson was acting in the course and scope of his employment at the time of the collision, and the presumption that he was doing so because he was driving a company car having vanished because of the evidence that Nelson was going home at the time of the accident, Arce contends that the jury heard evidence of a business purpose of, or benefit to, EAN in Nelson's driving the company vehicle and that this evidence supports the jury's finding that Nelson was

13

acting within the course and scope of his employment when the accident occurred. Arce argued in the trial court that EAN's practice of allowing company vehicles to be used by employees for personal activities furthered the company's business interests by (a) improving employee morale and (b) giving Nelson and his fellow employees greater knowledge of the vehicles they were leasing to the public. Arce has not raised these arguments on appeal, and they do not support the conclusion that Nelson was within the course and scope of his employment.

The employee-morale theory runs contrary to the tenor of Texas law on imposing vicarious liability for company-furnished vehicles. To establish that driving a company vehicle is within the course and scope of the employee's work, the plaintiff must prove that furnishing the vehicle was considered a "necessity" from the employer's perspective and "an integral part of the contract of employment." *Am. Gen. Ins. Co. v. Coleman*, 303 S.W.2d 370, 376 (Tex. 1957); *see also SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015) (noting that "the relationship between the travel and the employment" must be "so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer" (internal quotation marks omitted (quoting *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965)))); *Am. Home Assurance Co. v. De Los Santos*, No. 04-10-00852-CV, 2012 WL 4096258, at *4 (Tex. App.—San Antonio Sept. 19, 2012, pets. denied) (mem. op. on reh'g) ("[E]mployer-provided transportation that amounts to a necessity from the employer's perspective, and not just an accommodation to the

14

employee, may be sufficient to prove that travel originated in the employer's business."); *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex. App.—Austin 2011, pet. denied) (same).

Arce made no such showing here. While EAN's allowing employees to participate in a personal-use program for company vehicles may incidentally help morale, Nelson's personal use of an EAN vehicle was not "necessary" for his employment at EAN. He could have performed all of his duties without having personal-driving privileges of company vehicles. Rather, his use of the company vehicle was part of an optional personal-use program in which he voluntarily participated and for which he paid $200 per month. On the facts presented, it can only be concluded that the EAN personal-use program utilized by Nelson was, at best, an accommodation to managerial employees. It was certainly nothing approaching a necessity from EAN's perspective. *See Roberts v. Slosar*, No. 05-96-00032-CV, 1997 WL 657089, at *2 (Tex. App.—Dallas Oct. 23, 1997, no pet.) (not designated for publication); *Longoria v. Texaco, Inc.*, 649 S.W.2d 332, 334–35 (Tex. App.—Corpus Christi–Edinburgh 1983, no writ).

Arce also contended in the trial court that by allowing Nelson to use the cars from the Enterprise lot for personal use, EAN allowed him to gain knowledge about the cars it was leasing to the public and enhanced his ability to provide guidance about those cars to the employees he supervised. We resolve this argument as we did Arce's argument based on employee morale because Arce made no showing that knowledge

gained from personal use of the automobiles was "necessary" from EAN's perspective for Nelson to do his job. *See Coleman*, 303 S.W.2d at 376; *De Los Santos*, 2012 WL 4096258, at \*5. To the contrary, the evidence reflected that Nelson and the other branch employees were in and out of the cars on the Enterprise lot on a frequent basis. They took the cars for service and to pick up customers, did walk-arounds, and otherwise gained knowledge of the vehicles without the necessity of also driving them for personal use. Thus, while EAN may have incidentally benefitted from Nelson's using the cars for personal use, it was not necessary to EAN for him to do so to do his job. *See, e.g.*, *Hervey v. Enerpipe, Ltd.*, No. 03-18-00252-CV, 2018 WL 3637327, at \*2–3 (Tex. App.—Austin Aug. 1, 2018, no pet.) (mem. op.) (holding the mere fact that coworkers commuting between work and home stopped to check out a future worksite on their own initiative did not give rise to vicarious liability, nor did the fact that the employer paid for their fuel for the trip).

**(4) EAN's Driving Policies Do Not Establish Course and Scope**

Finally, Arce argues that the jury's finding that Nelson was acting in the course and scope of his employment is supported by the fact that EAN has safety policies and procedures for employees driving company vehicles for personal use. Arce contends that this means that EAN "controlled the manner in which Nelson drove company-owned vehicles at all times." The evidence shows:

- An employee in the EAN personal-use driving program must notify a superior if he decides to take an SUV or truck off the lot.

16

- EAN monitors employee accidents and determines whether such accidents are "chargeable" or "nonchargeable" to the employee.

- EAN may discipline or terminate employees for unsafe driving or suspend their driving privileges.

- EAN requires employees to report all accidents, moving violations, and convictions occurring in company vehicles.

- EAN has "driving policies" that apply to any employee driving an EAN vehicle, including requirements that an employee "maintain a valid driver's license," "maintain a satisfactory driving record," "operate vehicles in a safe and lawful manner at all times," and wear seat belts when on company business as well as conditions requiring minimizing distractions while driving, requiring minimizing risks of cell phone usage, and prohibiting radar detectors.

EAN's policies are designed to get its employees to drive in a "safe and lawful manner at all times," and EAN ultimately may deprive employees of the opportunity to drive company vehicles if they do not comply with the policies. However, EAN's policies do not control the details of an employee's driving. Arce does not cite this court to any authority that policies such as these create vicarious liability for an employer who provides access to its vehicles for personal use by its employees.

We were confronted with an analogous situation in *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 713 (Tex. App.—Fort Worth 2006, no pet.).[6] There, Mrs. Bell was a passenger in a van operated by her husband. The van was owned by VPSI, which contracted with the Fort Worth Transportation Authority to operate a vanpool

[6]While our analysis in *Bell* focused on the concept of vicarious liability of an employer for the acts of an independent contractor, *see* 205 S.W.3d at 718–21, we believe that the analysis provides the appropriate framework for our analysis here.

program. Mr. Bell, VPSI, and the Authority were parties to a "Three-Party Volunteer Driver Agreement." *Id.* at 711. The agreement specified that an Authorized Driver must have a valid driver's license; have at least five years' licensed driving experience; be at least twenty-five years of age; and be approved, in writing, by VPSI to operate vehicles provided by VPSI. The agreement further provided that the Authorized Driver "[was] not an agent, servant or employee of VPSI. The Authorized Driver [was] an independent party participating, with others, in a voluntary, not for profit, ridesharing agreement." *Id.* The agreement also provided that each driver who was assigned a van agreed to drive and maintain the van, including scheduled and unscheduled maintenance, at VPSI's cost; to recruit passengers to keep the vanpool at optimal occupancy; and to collect the vanpool passenger charges. Drivers received coupon books to present to approved maintenance dealerships, service vendors, and repair facilities, and the charges were billed directly to VPSI. In exchange, the drivers received daily commutes to and from their employment without charge and were also allowed personal use of the assigned vans on evenings and weekends for up to 250 miles per month. The Transportation Authority billed the drivers for fuel consumed during the 250 personal-usage miles. *Id.* at 710–11.

Mrs. Bell was injured on a Saturday when she rode in the VPSI van driven by Mr. Bell from their home in Forestburg to Decatur. Their first stop was at Kwik Lube to service the van as provided in the volunteer driver agreement. The Bells then went to shop at Wal-Mart, lunched at Taco Bell, picked up their grandchildren from their

18

daughter, and made a trip to see a Santa display. On the way home to Forestburg, the van hydroplaned and crashed into a tree, causing Mrs. Bell's injuries.

Mrs. Bell sued her husband, VPSI, and the Authority, alleging that Mr. Bell had been negligent in operating the van and that VPSI and the Authority were vicariously liable for his negligence. This court read Mrs. Bell's live petition as asserting theories of respondeat superior based on a master-servant relationship, retention of supervisory contractual control, and joint enterprise. *Id.* at 711–13.

We first analyzed the controlling agreements and held that Mr. Bell, as a matter of law, was an independent contractor, not an employee of VPSI or the Authority. *Id.* at 715. We then held that, assuming that Mr. Bell was an employee of either of the defendants, he was not acting in the course and scope of his employment at the time of the accident because he was either going home from work or was on a personal mission. *Id.* at 718. Finally, we reviewed Mrs. Bell's contention that, regardless of how her husband's relationship with VPSI and the Authority was characterized (employee or independent contractor), they retained contractual control over his operation of the vehicle, subjecting them to vicarious liability for his negligence. We summarized Mrs. Bell's contentions as follows:

> [Mrs. Bell] does not contend that VPSI or the Transportation Authority was exercising actual control over [Mr. Bell's] activities at the time of the accident. Therefore, the issue is whether VPSI and the Transportation Authority retained a contractual right of control over his activities sufficient to impose a duty on those parties to others on the highway. [Mrs. Bell] argues that sufficient right of control was retained under the three-party agreement, which authorized [Mr. Bell's] personal use of the

19

van and established detailed rules on how the van must be operated, even when the van was being used for personal purposes. Specifically, [Mrs. Bell] references the contract's requirement that [Mr. Bell] participate in a "basic driver training/safety awareness orientation[]" and "operate the vehicle in accordance with all applicable laws, ordinances, rules and regulations." She also notes that the program imposed additional rules including "safety tips" for operating the van such as: adjust seat and mirrors before driving; allow more room from the curb in making a turn; use assigned rear passengers to assist and guide in backing; always back slowly; use turn signals; in case of skid, do not lock brakes; wear seat belts at all times; and avoid excessive speed. [Mrs. Bell] then again points out that [Mr. Bell] was subject to being immediately terminated if he failed to comply because the Transportation Authority retained absolute right to terminate on thirty days['] notice or less if VPSI waived the notice requirement. She reasons that because the contractual right of control of VPSI and the Transportation Authority extended to his personal use, vicarious liability of those parties based upon that retention of contractual control should also be extended to his activities during personal use.

*Id.* at 720.

We rejected her argument. *Id.* In support of this holding, we noted several applicable principles regarding subjecting employers to liability for the conduct of contracting employees. First, we observed that

[a]n employer of an independent contractor does not incur a duty of care under Restatement Section 414 merely by requiring the independent contractor to comply with the employer's standard safety practices and applicable laws. *Hoechst–Celanese Corp.*[ *v. Mendez*], 967 S.W.2d [354,] 357 [(Tex. 1998)] (holding defendant's insistence that independent contractor observe and comply with federal laws, safety guidelines, and standard safety precautions did not impose unqualified duty of care to ensure contractor's employees did nothing unsafe); *Johnson v. Scott Fetzer Co.*, 124 S.W.3d 257, 266 (Tex. App.—Fort Worth 2003, pet. denied) (holding contractual requirement that distributors follow manufacturer's sexual harassment policies not sufficient retention of control to impose liability for dealer's harassment on manufacturer); *Victoria Elec. Coop., Inc. v. Williams*, 100 S.W.3d 323, 329 (Tex. App.—San Antonio 2002, pet.

20

denied) [(op. on reh'g en banc)] (holding utility's contractual right to require independent contractor to comply with applicable federal, State, and municipal safety laws and codes and utility's safety manual not sufficient to impose duty on utility to ensure safety of traveling public for activity of independent contractor in transporting utility poles on highway).

*Bell*, 205 S.W.3d at 720. We further noted that

> a contracting party's right to terminate or "fire an independent contractor for non-compliance (with contract provisions) does not create liability for everything the independent contractor does (or fails to do)." *Shell Oil Co.*[ *v. Khan*], 138 S.W.3d [288,] 293 [(Tex. 2004)] (holding right of oil company to force dealer to hire security guard by threatening to terminate dealership did not create liability on company for dealer's failure to do so); *Dow Chem. Co.*[ *v. Bright*], 89 S.W.3d [602,] 607–08 [(Tex. 2002)] (holding right to require compliance with safety regulations and to order work stopped if employer had known of violation did not impose duty on employer for independent contractor's negligence).

*Bell*, 205 S.W.3d at 720–21. We concluded by holding that, as a matter of law,

> [N]either VPSI nor the Transportation Authority retained sufficient contractual right of control to impose an independent duty on them to members of the traveling public, including [Mrs. Bell], to ensure that [Mr. Bell] did not drive at an excessive rate of speed on the highway. Nor did those parties retain sufficient right of control to subject them to vicarious liability for [Mr. Bell's] negligence.

*Id.* at 721.

Likewise, we hold here that as a matter of law, EAN's personal-use program and rules did not create a right of contractual control sufficient to impose vicarious liability on EAN for Nelson's negligence in this case. The arguments made by Mrs. Bell for vicarious liability were essentially the same as the arguments advanced by Arce. For the same reasons we stated in *Bell*, a similar result should occur here.

21

At the time of the collision, Nelson was going home and was not conducting any business for EAN; thus, he was not in the course and scope of his employment at the time of the collision. To sustain Arce's contention about the effect of EAN's personal-use policies would be tantamount to holding that Nelson and all other EAN employees similarly situated are in the course and scope of their employment whenever they are driving EAN vehicles for personal use. Such a holding would stretch the effect of these policies too far. *See Wausau Underwriters Ins. Co. v. Potter*, 807 S.W.2d 419, 422 (Tex. App.—Beaumont 1991, writ denied) ("The mere furnishing of transportation by an employer does not automatically bring the employee within the protection of the Texas Workers' Compensation Act. . . . If this were not the law in this State, then each and every accident in a company vehicle, including those operated for purely personal reasons, would be compensable under the Texas Workers' Compensation Act." (citing *Bottom*, 365 S.W.2d at 353; and then citing *U.S. Fire Ins. Co. v. Eberstein*, 711 S.W.2d 355, 357 (Tex. App.—Dallas 1986, writ ref'd n.r.e.))); *see also Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 630–31 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd) (op. on reh'g) (same).

Employers do not have authority over all aspects of their employees' lives and activities, as illustrated in *Eagle Trucking Co. v. Tex. Bitulithic Co.*, 612 S.W.2d 503 (Tex. 1981). Bitulithic operated hot-mix plants. G & G Construction contracted with Bitulithic to haul sand to Bitulithic's plant. G & G then contracted with Billy Wayne Peden, an assistant manager for Bitulithic, who also operated a sand-hauling service

with his own truck, to haul sand to Bitulithic for G & G. Peden employed Johnnie Wesley Guin to drive Peden's truck. Guin had a wreck in Peden's truck hauling sand to Bitulithic's plant under Peden's contract with G & G. The Supreme Court of Texas held that Bitulithic was not vicariously liable for Peden's actions even though he was a Bitulithic employee. *Id.* at 507–08. As noted by the Supreme Court in its discussion of *Eagle Trucking* in the *Painter* case, it held that "Texas Bitulithic's general authority over Peden as its employee would not extend to his actions in connection with his own business." *Painter*, 561 S.W.3d at 135.

Likewise, in the *Bell* case, Mr. Bell had a contract with his "employers" that provided him with the use of a company vehicle both during working hours and during personal time. The contract provided a variety of restrictions on his use of the vehicle, both during work and during personal use. The incident in question occurred while he was using the vehicle for personal use. We held that he was an independent contractor and that the restrictions in the agreement that applied to both his personal and work time did not make his "employers" vicariously liable for his negligence. *Bell*, 205 S.W.3d at 720–21.

Similarly, we view the personal-use program here as an agreement between EAN and Nelson for the use of its vehicles when Nelson was on his personal time. Nelson voluntarily exercised his option as a managerial employee to utilize EAN's vehicles for personal use subject to EAN's driving policies. EAN accepted his offer. EAN calculated the fair value of the personal-use option to be $200 per month, which

Nelson agreed to pay. Neither party was compelled to enter into this agreement. Rather, both parties voluntarily entered into the agreement, which was separate from Nelson's other compensation with EAN for his company-directed duties. Nelson's position is analogous to Peden's independence from his employer, Bitulithic, relative to the conduct of his own business. *See Eagle Trucking Co.*, 612 S.W.2d at 508. Further, Nelson's agreement with EAN, which applied to his personal use of EAN vehicles, shared many of the use and activity restrictions present in the *Bell* agreement, which we held did not constitute contractual retention of control for vicarious liability purposes. 205 S.W.3d at 720–21.

Because employers and employees are free to contract with respect to matters that arise from an employee's "personal business" without necessarily creating vicarious liability for the employer, we hold that the EAN personal-use program did not operate to impose vicarious liability on EAN, and we reject Arce's contention.

### (5) We Resolve EAN's Sole Issue Against Arce

Having held that Nelson was not in the course and scope of his employment with EAN at the time of the accident and having rejected all of Arce's arguments, we hold that there was legally insufficient evidence to support the jury's finding that Nelson was in the course and scope of his employment with EAN at the time of the accident. Because this determination is dispositive, we need not consider the remainder of EAN's issue challenging the factual sufficiency of the evidence supporting the verdict. *See* Tex. R. App. P. 47.1. We sustain EAN's sole issue.

24

**E. Conclusion**

Having held that legally insufficient evidence supports the jury's answer to Question 1 regarding EAN's vicarious liability for Nelson's actions, we reverse the judgment of the trial court and render judgment that Arce take nothing. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Inv. Co. of the Sw., Inc. v. Dugan*, No. 05-98-02023-CV, 2001 WL 428719, at *1 (Tex. App.—Dallas Apr. 26, 2001, no pet.) (mem. op., not designated for publication).

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: October 14, 2021